UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )  Case No. 1:10CV 72 LMB<br>) |
| RIVER HILLS ANTIQUE TRACTOR CLUB, INC., et al., | )<br>)<br>) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

This matter is before the court on the Complaint for Declaratory Judgment of Plaintiff Atlantic Casualty Insurance Company, Inc. Plaintiff seeks a declaration that there is no coverage under a policy issued to Defendant River Hills Antique Tractor Club, Inc. for any liability of defendants in an action filed in the Circuit Court of Perry County, Missouri, and that plaintiff is under no obligation to defend or indemnify defendants. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c).

Presently pending before the court are the parties' cross motions for summary judgment. (Docs. No. 46, 47). Responses and Replies have been filed. (Docs. No. 49, 50, 51, 52). For the reasons discussed below, plaintiff's motion for summary judgment will be granted and defendants' motion for summary judgment will be denied.

**Background**

The parties agree on the underlying facts.[1] Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty") is a North Carolina Corporation that transacts insurance business in the State of Missouri. Defendant River Hills Antique Tractor Club ("River Hills") is a Missouri Nonprofit Corporation. Defendant Kerri Austin is a resident and citizen of the State of Missouri. Defendants Bernard Baer, Russell Brandes, Lester Hudson, Ray H. Kiefer, Bernard Flieg, Karen Faye Bronenkant, John Muench, Michael Seabaugh, Paul Hayden, Kurt Kiefer, Dennis Lappe, Dale Prevallet, and Joe Roth are individual members of River Hills.

Defendant Kerri Austin has brought a wrongful death suit in the Circuit Court of Perry County, Missouri, styled Kerri Austin v. River Hills Antique Tractor Club, et al., Cause No. 09PR-CC00048, alleging that her husband, Jason Austin ("Decedent"), was killed on October 3, 2009, by the negligence of Defendant River Hills while a volunteer at the Altenburg Fairgrounds in Altenburg, Missouri, helping to load a tractor pull sled owned by River Hills.[2] Both Kerri Austin and her husband Jason Austin, the Decedent, were members of Defendant River Hills.

Plaintiff Atlantic Casualty has filed its Amended Complaint for Declaratory Judgment, which requests a declaration concerning whether its insurance policy covers River Hills and individual members of River Hills named as defendants. Each of the defendants have filed an Answer and a Counterclaim against Atlantic Casualty for Declaratory Judgment, requesting a declaration that each defendant is covered under the policy for the death of Jason Austin and that

---

[1]The parties have filed a Joint Statement of Undisputed Facts. (Doc. No. 46). The court's recitation of the facts is taken from this joint statement.

[2]A copy of the Petition was attached to the Joint Statement of Undisputed Facts and incorporated by reference.

2

Atlantic Casualty has a duty to defend River Hills in the wrongful death action brought by Kerri Austin.

Atlantic Casualty issued a Commercial General Liability Policy of insurance to Defendant River Hills bearing policy number L054004318 with a policy period of March 19, 2009 to March 19, 2010 ("Policy"). The Policy was in full force and effect on the date of the accident, on October 3, 2009. Defendants River Hills and the individually named members complied with all conditions precedent under the Policy. The "bodily injury" to Decedent took place in the "coverage territory" defined by the Policy. The policy covers liability arising out of an occurrence. An occurrence is defined to mean an accident. The claims in the underlying suit are claims for death arising from an accident. The terms of the Policy excluding coverage states that "[w]here there is no coverage under this policy, there is no duty to defend any insured." (AGL-NC 1-08, specifically AGL-056 1-08 (page 4 or 9)).

The Decedent died while in the process of helping to load and move a tractor pull sled owned by Defendant River Hills by massive body trauma caused by the sled coming forward and crushing him. The Decedent had been involved in moving River Hills' sled on other occasions, at least ten times. There is no one in charge of moving the sled; a few "guys" would call each other and get enough "guys" together to do it.

On October 3, 2009, the Decedent arrived in his own truck at Altenburg Fairgrounds in Altenburg, Missouri, where Defendant River Hills' tractor sled was located. Bernard Baer, Lester Hudson, and Dwain Manche were helping load the tractor pull sled before the Decedent arrived. The sled was being prepared so that the Decedent could transport it to a fair in Marble Hill, Missouri. Normally when helping to move the sled, the Decedent would back his truck underneath the tractor pull sled upon arrival. On October 3, 2009, upon arriving at the Altenburg

3

Fairgrounds, the Decedent parked his truck approximately 75 feet in front of the tractor pull sled, leaving his engine running.  The Decedent was underneath the sled when it began to tip and fall over, and caused the death of the Decedent.

For his help on October 3, 2009, by using his truck to haul the tractor pull sled, the Decedent was reimbursed $50.00 to make up for his fuel expense.  Defendant River Hills never makes payments for hourly wage reimbursements, they only reimburse for gas expenses.

The Circuit Court of the County of Cape Girardeau, Missouri, has ruled in the underlying suit, styled Kerri & Grant Austin v. River Hills Antique Tractor Club, et al., Cause No. 09PR-CC00048-01, and granted summary judgment to Defendants Dwain Manche, Bernard Baer, Lester Hudson, Ray Kiefer, Russell Brandes, Bernard Fleig, Karen Bronenkant, and John Muench.[3]

## I.   Summary Judgment Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material only when its resolution affects the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.  "Because the interpretation and construction of insurance policies is a matter of law, the issue of whether the duty to defend or indemnify exists under a policy is particularly amenable to summary judgment."  Newyear v. Church Ins. Co., 155 F.3d 1041, 1043 (8th Cir. 1998).

---

[3]Copies of the orders and judgments in this case are attached to the Joint Statement of Undisputed Facts.

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

**II.   Discussion**

The material facts are not in dispute. The question presented in this case is whether the Policy excludes coverage for the injuries alleged in the underlying suit.

Under Missouri law, which applies to this diversity case, the interpretation of an insurance contract is a question of law. Schmitz v. Great Am. Assur. Co., 337 S.W.3d 700, 705 (Mo. 2011) (en banc). The rules governing the interpretation of insurance polices are well settled under Missouri law. Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 77 (Mo. 1998) (en banc). Specifically, a court must apply the general rules of contract construction when interpreting an insurance policy, because insurance policies are contracts. Todd v. Missouri United Sch. Ins. Council, 223 S.W.3d 156, 160 (Mo. 2007) (en banc).

When interpreting a contract, a court must give the contract's terms their plain and ordinary meaning, unless a term is ambiguous. Farmland Indus., Inc. v. Republic Ins. Co., 941 S.W.2d 505, 508 (Mo. 1997) (en banc); Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300,

5

301 (Mo. 1993) (en banc). A term's plain and ordinary meaning is the meaning that an average layperson would give the term. Farmland Indus., Inc., 941 S.W.2d at 508. In addition, a court "should not interpret policy provisions in isolation but rather evaluate policies as a whole." Ritchie v. Allied Prop. & Cas. Ins. Co., No. SC 90085, 2009 WL 3833377, at *2 (Mo. Nov. 17, 2009). An insurance contract includes the declarations, the form policy, and any endorsements and definitions. Grable v. Atlantic Cas. Ins. Co., 280 S.W.3d 104, 108 (Mo. Ct. App. 2009). In interpreting an insurance contract, the court must give the policy's provisions a "reasonable meaning," and avoid an interpretation that renders parts of the policy "useless or redundant." Dibben v. Shelter Ins. Co., 261 S.W.3d 553, 556 (Mo. Ct. App. 2008). The insured bears the burden of proving coverage, while the insurer bears the burden of establishing the applicability of an exclusion. State Farm Mut. Auto Ins. Co. v. Stockley, 168 S.W.3d 598, 600 (Mo. Ct. App. 2005).

A term is ambiguous only if the terms are "reasonably and fairly open to different constructions, and there is duplicity, indistinctness, or uncertainty of meaning." Miller's Classified Ins. Co. v. French, No. ED 92306, 2009 WL 2151387, at *2 (Mo. Ct. App. July 21, 2009) (citations omitted). When an ambiguity exists in an insurance policy, the court must interpret the policy in favor of the insured. Todd, 223 S.W.3d at 160. If, however, the policy is unambiguous, the court must enforce the contract's terms as written. Id.

**A.    Definition of Employee**

Plaintiff contends that the employee exclusion applies to bar coverage for the underlying action under the Policy.

Endorsement AGL-NC 01/08 of the Exclusions/Limitations-Combination Endorsement-Non-Contractors, specifically AGL-055 8/05 (page 3 or 9) provides in relevant part:

6

>Exclusion e.  Employer's Liability of Coverage A.  Bodily Injury and Property Damage Liability (Section I-Coverages) is replaced by the following:
>>This insurance does not apply to:
>>>(I)     "bodily injury" to any "employee" of any insured arising out of or in the course of:
>>>>(a)     Employment by any insured; or
>>>>(b)     Performing duties related to the conduct of any insured's business
>
>***
>
>"Employee" shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

Plaintiff argues that the plain language of the Policy excludes coverage for bodily injury to volunteers.  Plaintiff contends that the facts in this case clearly demonstrate that Decedent died while he was volunteering for the purpose of providing services to River Hills.  Plaintiff thus argues that the court should enter declaratory relief on behalf of Atlantic Casualty and grant its Motion for Summary Judgment.

Defendants argue that the exclusion cited by Atlantic Casualty is inapplicable to the known facts or is ambiguous and, therefore, does not apply to preclude coverage for the insured.  Specifically, defendants contend that Decedent was not an employee and was not performing duties related to the conduct of the insured's business.  Defendants further argue that the Policy's definition of "employee" is ambiguous, and that the Policy must, therefore, be construed against the insurer and in favor of coverage.  Defendants contend that they are entitled to summary judgment.

**1.     Whether the Policy's Definition of "Employee" is Ambiguous**

As previously stated, the Policy defines an "employee" as including "any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on

7

behalf of any insured, whether or not paid for such services and whether or not an independent contractor." (AGL-055 8/05 page 3).

The court finds that the Policy's definition of employee is not ambiguous. Defendants argue that Atlantic Casualty's failure to explicitly include members in the definition of employee creates an ambiguity. The undersigned disagrees. The omission of members does not create "duplicity, indistinctness, or uncertainty of meaning" where none otherwise existed. As plaintiff points out, the Policy at issue is a general liability policy designed to protect River Hills and its members against claims by third parties. The Policy's broad definition of employee plainly includes volunteers. The fact that the Decedent was a member does not prohibit him from being considered a volunteer under the clear terms of the Policy. Although the parties may disagree as to whether a member should be considered a volunteer, this disagreement does not render the Policy ambiguous.

**2.     Whether Decedent was Volunteering at the Time of his Death**

The court further finds that the undisputed facts reveal that Decedent was volunteering for the purpose of providing services to or on behalf of River Hills at the time of his death. The parties agree that the Decedent died while in the process of helping to load and move a tractor pull sled owned by Defendant River Hills at the Altenburg Fairgrounds in Altenburg, Missouri. The sled was being prepared so that the Decedent could transport it to a fair in Marble Hill, Missouri. The Decedent had been involved in moving River Hills' sled on at least ten other occasions. The Decedent was not paid an hourly wage for his help with the sled, but he was reimbursed $50.00 for his fuel expense. In the underlying suit, Kerri Austin alleges that the Decedent was killed on October 3, 2009, by the negligence of Defendant River Hills while a

8

"volunteer" at the Altenburg Fairgrounds, helping to load a tractor pull sled owned by River Hills. (Pl's Ex. 1 at p. 2).

From these undisputed facts, the average layperson would find that the Decedent was volunteering for the purpose of providing services to River Hills at the time of his death.[4] Decedent clearly provided a service to River Hills in assisting with River Hills' tractor pull sled. River Hills reimbursed the Decedent for his gas expense in return for the service the Decedent provided. The Policy's definition of employee is very broad, and does not require a formal relationship, contract, or payment.

B.   **Duties Related to the Conduct of Insured's Business**

Defendants next argue that, even if the Decedent is found to meet the Policy's definition of "employee," plaintiff has failed to demonstrate that the Decedent sustained bodily injury arising out of or in the course of employment by any insured or performing duties related to the conduct of any insured's business. Defendants contend that the undisputed facts show that the Decedent did not sustain bodily injury arising out of or in the course of performing duties related to the conduct of any insured's business. Specifically, defendants argue that the term "business" as used in the Policy is ambiguous and that plaintiff has not produced evidence that moving the tractor pull sled would constitute the "business" of the club. Defendants point out that neither the members nor the club earned a profit or had any profit motive relating to the tractor pull events.

---

[4] Defendants argue that collateral estoppel is inappropriate as to the Federal Volunteer Protection Act. The court agrees that the application of collateral estoppel is inappropriate in this case and that the Federal Volunteer Protection Act is unrelated to the Policy's definition of "volunteer."

As previously stated, the Policy excludes coverage for bodily injury to any employee arising out of or in the course of "[p]erforming duties related to the conduct of any insured's business." (AGL-055 8/05, p. 3). The Policy does not define "business."

In determining the ordinary meaning of language in insurance contracts, courts may consult standard English language dictionaries. Shahan v. Shahan, 988 S.W.2d 529, 535 (Mo. banc 1999). "A word with more than one dictionary meaning is not necessarily ambiguous of the court concludes that, in context, only one meaning that comports with the parties' objectively reasonable expectations is applicable." Strader v. Progressive Ins., 230 S.W.3d 621, 624 (Mo. Ct. App. 2007).

In arguing that the term "business" is ambiguous, defendants cite the following dictionary definition of the term "business:"

> *a :* a usually commercial or mercantile activity engaged in as a means of livelihood : trade, line; *b* : a commercial or sometimes an industrial enterprise; *also* : such enterprises *c* : usually economic dealings : patronage.

(Webster's Ninth New Collegiate Dictionary, 190 (1986 Ed.)). Defendants argue that the common understanding of the word "business," therefore, necessarily includes some element of commercial enterprise or profit motive. Defendants note that neither River Hills nor its members expected to make a profit from the transportation of the tractor pull sled or the tractor pull itself. Defendants thus argue that the term "business" is ambiguous.

Plaintiff argues that the term "business" does not have a definite or legal meaning. Plaintiff contends that this, however, does not make the term ambiguous. Plaintiff cites two different dictionary definitions of the term "business." Plaintiff first cites the definition from the New Webster Encyclopedia Dictionary of the English Language:

> ...A matter or affair that engages a person's time, care and attention; that which one does for a livelihood; occupation; employment; mercantile concerns, or traffic in general; the

10

> proper duty; what belongs to one to do; task or object undertaken; concern; right of action or interposing; affair; point; matter. a. Relating to or connected with business, traffic, trade, etc....

(New Webster Encyclopedia Dictionary of the English Language, 109 (1952 Ed.)). Plaintiff next cites the following definition of "business," from Webster's New World Dictionary:

> ...1. one's work, occupation, or profession; 2. a special task, duty or function; 3. rightful concern or responsibility (no one's *business* but his own); 4. a matter, affair, activity, etc. (the *business* of packing for a trip); 5. the buying and selling of commodities and services; commerce; trade; 6. a commercial or industrial establishment; store, factory, etc.; 7. the trade or patronage of customers; 8. commercial practice or policy;...

(Webster's New World Dictionary, 189 (1988 Ed.)). Plaintiff argues that the term "business" is broad and is not susceptible to one definition. Plaintiff contends that because the Deceased was engaged in one of the activities of the club, namely the moving of the tractor pull sled, he was necessarily involved in the "business" of the club.

As the parties' pleadings demonstrate, there are many different definitions for the term "business." See also Black's Law Dictionary, 198 (6th Ed. 1990) ("[t]hat which habitually busies or occupies or engages the time, attention, labor and effort of persons as a principal serious concern or interest or for livelihood or profit"). The fact that different meanings exist does not, however, cause the term to be ambiguous. Despite defendants' argument to the contrary, not all definitions of "business" include a commercial or profit aspect. The definitions cited by plaintiff demonstrate that the term is often used independently of any notion of profit. Rather, the term is often used in a broader sense to describe one's "affairs," "activities," or "livelihood."

In the instant case, the corporate status of River Hills does not cause the term "business" to be ambiguous. Rather, the average layperson purchasing a commercial general liability policy would find that the term "business" as used in the Policy includes the activities of a nonprofit corporation such as River Hills. Although defendants interpret the term "business" narrowly to

11

require a profit motive, this interpretation is not supported by the Policy.  The court, therefore, finds that the term business as used in the Policy is not ambiguous.

The court further finds that the Decedent's act of moving the tractor pull sled constitutes the "business" of River Hills.  River Hills is an antique tractor club and owned the sled that the Decedent was moving at the time of his death.  Among River Hills' activities is conducting tractor pulls with a sled.   River Hills frequently participates in tractor pulls and the Decedent had assisted with moving the sled on at least ten other occasions.  These undisputed facts reveal that the Decedent was engaged in one of the activities of the club at the time of his death, and was therefore involved in the "business" of the club.

Plaintiff has demonstrated that the plain language of the Policy excludes coverage for any liability of defendants in the underlying action and that plaintiff is under no obligation to defend or indemnify defendants in said action.  Thus, summary judgment will be granted in favor of Plaintiff Atlantic Casualty and against defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 46) be and it is **granted**.

**IT IS FURTHER ORDERED** that the Joint Motion of Defendants River Hills Antique Tractor Club, Inc. and Its Members For Summary Judgment (Doc. No. 47) be and it is **denied**.

Dated this   9th    day of January, 2012.

_____
LEWIS. M. BLANTON
UNITED STATES MAGISTRATE JUDGE

13

Case: 1:10-cv-00072-LMB   Doc. #: 54   Filed: 01/09/12   Page: 13 of 13 PageID #: 1842